Filed 6/10/16  P. v. Lopez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BERNABE JUAREZ LOPEZ,<br><br>Defendant and Appellant. | H040272<br>(Santa Clara County<br>Super. Ct. No. C1244404) |

A jury found defendant Bernabe Juarez Lopez guilty of assault with a deadly weapon for stabbing Douglas Van Ownbey through the wrist with a screwdriver during an altercation at an apartment complex.  (Pen. Code, § 245, subd. (a)(1).)[1]  Defendant argues the conviction must be reversed because:  the trial court abused its discretion and violated defendant's federal constitutional right to present a defense by excluding testimonial evidence; the trial court erred in not providing an accident instruction to the jury sua sponte; defense counsel was ineffective for not seeking an accident instruction; that the foregoing errors were cumulatively prejudicial; and that the section 667.5, subdivision (a) prior prison term enhancement should have been stricken rather than stayed.  For the reasons stated here, we will modify the judgment to strike the section 667.5 enhancement and affirm the judgment as modified.

---

[1]  Unspecified statutory references are to the Penal Code.

# I.  TRIAL COURT PROCEEDINGS

On November 3, 2012, Douglas Van Ownbey received a "through-and-through" puncture wound that entered his left wrist and exited near the base of his left thumb during an altercation with defendant.

## A.  ALTERCATION AND ARREST

The jury heard two versions of the altercation.  Ownbey testified that around 4:40 p.m. on November 3 he approached a two-story apartment complex he owned in San Jose and saw defendant standing on the second-story walkway railing.  Defendant was shaking the railing hard enough that Ownbey feared he would damage it.  From his position on the ground floor about 20 feet away Ownbey asked defendant to get down, to which defendant responded " 'You want to fight?' "  Defendant stepped down from the railing but continued to "kind of shake it."  Ownbey walked up a staircase on the street-facing side of the building to knock on doors and ask the tenants whether they knew defendant.  Defendant remained upstairs but moved down the hall toward the back of the property and asked Ownbey if he wanted to fight three or four times.  Ownbey repeatedly asked defendant to leave.  Defendant proceeded down a staircase on the back side of the building and onto the driveway.  Ownbey testified that during this period he did not yell at or threaten defendant and also did not display a weapon.

Ownbey followed defendant down the back stairs and told defendant he would call the police if he did not leave.  Defendant's demeanor became more aggressive and he looked visibly concerned about the police being called.  Ownbey became worried and walked to his car that was parked on the street in front of the building to get his phone to call 911.  His car was parked next to a construction fence, meaning that there were roughly three feet between the fence and the passenger seat where his phone was located.  Ownbey opened the passenger door, reached in to get his phone, and saw defendant in his peripheral vision pull out a Phillips-head screwdriver from his waistband.  Defendant lunged at Ownbey.  Ownbey raised his left hand to block his face from the screwdriver

2

and defendant stabbed the screwdriver through Ownbey's wrist. Ownbey pulled his hand toward his body to dislodge the screwdriver, used that hand to push defendant away, and retrieved his phone and a flashlight from the car. Once Ownbey was a safe distance from defendant he called 911. Defendant ran down the street and jumped over a fence. Ownbey acknowledged that his dogs were in his car but denied letting them out during the altercation. Ownbey estimated that two to three minutes elapsed between first seeing defendant upstairs and getting stabbed.

Defendant testified with his version of the altercation, stating that he was living with someone temporarily at the apartment complex in November 2012 and was waiting outside on November 3 because he had lost his key. Defendant denied that he ever shook the railing. Ownbey arrived and asked what defendant was doing there and defendant told him he was waiting for someone. Ownbey walked up the front stairs looking angry and upset, leading defendant to descend the back staircase. Defendant did not leave the property immediately because Ownbey was questioning him about who lived in the apartment. Ownbey then came down the back stairs, grabbed defendant by his jacket, threw him to the side, and told him to get off the property. Defendant asked Ownbey to let him go three times before Ownbey threw him to the ground. Defendant then noticed something "shiny" in Ownbey's hand and took off his jacket to protect himself. Ownbey attacked defendant and tried to stab him. Defendant used his hands and knees to block Ownbey's assault. Defendant took out his cellular phone to call the police but Ownbey knocked it out of his hand and it broke.

Defendant claimed Ownbey opened his car and let out his dogs but became even more upset when they did not attack defendant. As Ownbey continued attacking defendant, defendant noticed someone had started bleeding. Defendant denied stabbing Ownbey. Ownbey returned to his car, took out something that looked like a gun, and put it under his arm. Fearing what might happen if he stayed longer, defendant left the apartment complex. On cross-examination, defendant acknowledged that he did not

3

sustain any cuts on his hands or face despite testifying that he received a lot of punches from Ownbey.

San Jose Police Department Officer William Foster testified at trial that he responded to a stabbing report as a result of Ownbey's 911 call. Officer Foster was driving his patrol car in the vicinity of the apartment complex when he noticed a person walking down the road (identified by Foster at trial as defendant) matching the description of the suspect he had received from his dispatcher. Foster drove past defendant, noticed defendant crossing the street, and made a U-turn so that he could stop him. Officer Foster turned on his emergency lights, got out of his patrol car, drew his gun, and ordered defendant to lie down on the ground. Defendant took off his jacket and threw it in a bush and then complied with the officer's directive. Foster placed defendant in handcuffs and noticed what appeared to be fresh blood on his shirt and pants. Officer Foster stated that defendant did not try to flee and, with the exception of taking off his jacket, followed the officer's orders.

San Jose Police Officer William Pender testified that he responded to the apartment complex and arranged medical help for Ownbey. Ownbey "had blood all over him" and "seemed a little visibly shaken." After learning through his radio dispatcher that a suspect was in custody, Officer Pender drove Ownbey to where Officer Foster had arrested defendant and Ownbey identified defendant as the assailant. Pender stated defendant was arrested about 30 feet from the apartment complex but there was a street between the two locations. Officer Pender also searched the area where Ownbey told him defendant had run and jumped over the fence for a screwdriver but did not find one. The screwdriver was never found.

Following a preliminary hearing, defendant was held to answer and charged by felony information with assault with a deadly weapon. (§ 245, subd. (a)(1).) The information alleged that defendant personally used a dangerous and deadly weapon (a screwdriver) and personally inflicted great bodily injury during that assault. (§§ 667;

4

1192.7, subd. (c)(23); 12022.7, subd. (a); 1203, subd. (e)(3).) The information further alleged one prior serious or violent felony conviction (§ 667, subds. (b)–(i)), one prior serious felony conviction (§ 667, subd. (a)), and one prior prison term for a violent felony (§ 667.5, subd. (a)), all arising out of the same previous conviction for assault with a deadly weapon.

## B. EVIDENTIARY ISSUES

During trial, the court resolved certain evidentiary objections relevant to this appeal outside the presence of the jury. The trial court held an Evidence Code section 402 hearing regarding the prosecutor's objection to defendant's request to elicit testimony from Officer Foster about statements defendant volunteered before he was arrested. Officer Foster testified that defendant "really didn't show much emotion or anything like that" when the officer stopped him. After refreshing his recollection from his police report, Officer Foster stated defendant told him, " 'I did not stab anyone' " and that "the other subject tried to stab him and stabbed himself in the hand." Officer Foster stated defendant offered those statements without any questioning, that defendant seemed relatively calm, and that he spoke in a normal tone of voice. About four or five minutes elapsed between when Officer Foster received the incident report from his dispatcher and when he ordered defendant to lie on the ground.

Defense counsel argued defendant's hearsay statements were admissible under the spontaneous statement and state of mind exceptions to the rule against hearsay. The trial court found that the statements were not spontaneous statements because there was little evidence suggesting defendant was excited when he made the statements and the four to 10 minutes between the assault and being detained by Officer Foster gave defendant "a mode to fabricate his version of events." Finding that defendant's statement was untrustworthy and a "self-serving attempt[ ] to minimize or excuse his conduct," the trial court sustained the prosecutor's objections to the testimony and ordered counsel not to elicit testimony about the statements.

In addition to defendant's hearsay statements, defense counsel sought to attack Ownbey's credibility by calling a tenant from the apartment complex named Epimeno Garcia-Cabrera, who would testify that Ownbey threatened to evict him if he talked with anyone about the case. Defense counsel stated he had evidence showing that Ownbey was in fact presently attempting to evict Garcia-Cabrera. The prosecution raised Evidence Code section 352 and relevance objections. Instead of holding an Evidence Code section 402 hearing, the court allowed defense counsel to recall Ownbey to testify in front of the jury. Ownbey testified that he remembered asking Garcia-Cabrera on the day of the assault if he knew defendant or was renting a room at the apartment complex to him. However, Ownbey did not recall having any other conversations with Garcia-Cabrera about the case. Ownbey still did not remember having a conversation with Garcia-Cabrera about the case even after defense counsel attempted to refresh Ownbey's recollection by showing him a written statement purportedly drafted by Garcia-Cabrera.

After Ownbey's testimony, the court asked the jury to leave the room to further discuss defense counsel's request. The court indicated that Ownbey's hearsay statement regarding the threat of conviction was not admissible as impeachment evidence of a prior inconsistent statement because Ownbey did not recall having a conversation and thus there were no statements by Ownbey to impeach. The court also found that allowing Garcia-Cabrera to recount Ownbey's threat would be hearsay because the only relevant purpose of the testimony would be for its truth. The court considered possibly letting Garcia-Cabrera testify he was threatened and then allowing Ownbey to respond. The prosecutor argued that line of questioning would open a collateral eviction issue because the prosecution would then have to ask Garcia-Cabrera about the pending eviction proceeding to impeach Garcia-Cabrera's credibility and suggest a motive to lie about Ownbey's alleged threat. The court sustained the prosecution's Evidence Code section 352 objection based on the risk of confusing the issues and precluded defense

6

counsel from asking Garcia-Cabrera about any threats from Ownbey. Garcia-Cabrera did not testify at trial.

## C. TRIAL, VERDICT, AND SENTENCING

During defendant's trial, the jury heard testimony from Ownbey, Officer Foster, Officer Pender, and defendant consistent with the foregoing summary. The prosecution also called Craig Lee, an expert in DNA analysis and comparison from the Santa Clara County Crime Lab, who testified that Ownbey's DNA matched that of blood samples obtained from the shirt and pants defendant wore on the day of the assault.

Among the instructions given to the jury, the trial court provided CALCRIM Nos. 250, 875, and 3470. CALCRIM No. 250 provides, in relevant part, that to find defendant guilty of assault with a deadly weapon, the jurors had to find that defendant not only committed the prohibited act, but also did "so with wrongful intent." CALCRIM No. 875 explains the elements of assault with a deadly weapon: "the People must prove that: [¶] 1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] 4. When the defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person; [¶] AND [¶] 5. The defendant did not act in self-defense." That instruction continues that someone "commits an act willfully when he or she does it willingly or on purpose." CALCRIM No. 3470 defines self-defense, noting that defendant is not guilty of assault with a deadly weapon if he "reasonably believed that he was in imminent danger of suffering bodily injury," he "reasonably believed that the immediate use of force was necessary to defend against that danger," and he "used no more force than was reasonably necessary to defend against that danger." Defense counsel did not request CALCRIM No. 3404, regarding accidental actions.

7

The prosecutor claimed during closing argument that defendant's story was biased, inconsistent, and uncorroborated. Defense counsel's closing argument attacked perceived inconsistencies in Ownbey's testimony and argued that Ownbey, not defendant, was the aggressor. Counsel argued Ownbey's puncture wound was "perfectly consistent with a self-inflicted wound" based on defendant's testimony that Ownbey had one hand out in front of him and had something in his other hand. He stressed that defendant was not liable for injuries Ownbey sustained if the jury believed Ownbey was the initial aggressor and that defendant acted in self-defense.

The jury convicted defendant of assault with a deadly weapon and found true the special allegation that defendant personally inflicted great bodily injury upon Ownbey during that assault. (§§ 245, subd. (a)(1); 12022.7, subd. (a).) Defendant waived jury on the special allegations and admitted he had previously been convicted of assault with a deadly weapon, which formed the basis for those special allegations. (§§ 667, subds. (a), (b)–(i); 667.5, subd. (a).) In August 2013, the court denied defendant's *Romero*[2] motion to dismiss his prior strike conviction and sentenced defendant to 16 years in state prison, consisting of eight years for assault with a deadly weapon (upper term of four years (§ 245, subd. (a)(1)), doubled for the prior strike (§ 667, subd. (e)(1))), three years for the personal infliction enhancement (§ 12022.7, subd. (a)), and five years for the prior serious felony enhancement (§ 667, subd. (a)(1)). The court imposed but stayed execution of a three-year prior prison term enhancement (§ 667.5, subd. (a)). (Citing *People v. Jones* (1993) 5 Cal.4th 1142 (*Jones*).)

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

## II. DISCUSSION

### A. DEFENDANT'S HEARSAY STATEMENTS

Defendant argues that the trial court abused its discretion and violated his Sixth and Fourteenth Amendment[3] rights to present a complete defense when it excluded defendant's hearsay statements to Officer Foster that he did not stab anyone and that Ownbey stabbed himself because those statements were admissible as spontaneous statements, state of mind evidence, and prior consistent statements. (Citing *Chambers v. Mississippi* (1973) 410 U.S. 284, 295, 302 ["[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."]; *Michigan v. Lucas* (1991) 500 U.S. 145, 151.) We review the court's evidentiary decisions for an abuse of discretion. (*People v. Morrison* (2004) 34 Cal.4th 698, 719 (*Morrison*).)

### 1. Defendant's Statements Were Not Spontaneous Statements

Though an out-of-court statement "made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated" (Evid. Code, § 1200) is hearsay and generally inadmissible, a hearsay statement is admissible if it: "(a) [p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) [w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.) Whether the statement was made under the stress of excitement "is informed by a number of factors, including the passage of time between the startling occurrence and the statement, whether the statement was a response to questioning, and the declarant's emotional state and physical condition." (*People v. Clark* (2011) 52 Cal.4th 856, 925 (*Clark*).) " 'Neither lapse of time between the event and the declarations nor the fact that the declarations were elicited by questioning deprives the statements of spontaneity if it nevertheless appears that they

---

[3] References to the Sixth and Fourteenth Amendments in this opinion are to the corresponding amendments to the United States Constitution.

were made under the stress of excitement and while the reflective powers were still in abeyance.' " (*People v. Poggi* (1988) 45 Cal.3d 306, 319 (*Poggi*), italics omitted.) "The trial court must consider each fact pattern on its own merits and is vested with reasonable discretion in the matter." (*Morrison, supra,* 34 Cal.4th at p. 719.)

Defendant's statements indisputably purported to describe and explain an event he perceived. However, the record supports the trial court's decision that defendant did not make the statements while he was under the stress of excitement caused by the altercation. (Evid. Code, § 1240, subd. (b).) Officer Foster testified that defendant was relatively calm and spoke in a normal tone of voice. From that, the court reasoned "there's very little to suggest" that defendant was excited and making a spontaneous statement. As the trial court's reasoning suggests, defendant's calm demeanor is inconsistent with a declarant whose " 'reflective powers were still in abeyance.' " (*Poggi, supra,* 45 Cal.3d at p. 319, italics omitted.)

Defendant argues that the relatively brief passage of time between the altercation and the statements supports their spontaneity, claiming only four or five minutes transpired between those events. However, that time period was Officer Foster's estimate of the time between receiving a call from his dispatcher and finding defendant, meaning that the actual period between the altercation and the statements would be longer to include the time necessary for Ownbey to report the incident to the 911 dispatcher and for the dispatcher to relay the information to Foster. Even assuming the passage of time was as short as defendant suggests, that is but one of "a number of factors" the trial court was required to analyze in exercising its discretion. (*Clark, supra,* 52 Cal.4th at p. 925.)

Defendant's reliance on opinions where statements were admitted despite being made after larger periods of time had passed are distinguishable because courts must consider each fact pattern on its own merits. (*Morrison, supra,* 34 Cal.4th at p. 719.) For example, while the declarant in *People v. Francis* (1982) 129 Cal.App.3d 241, made statements implicating the defendant Francis as the individual who stabbed him "within

approximately 20 minutes of the stabbing," the declarant was profusely bleeding and in such a "badly wounded condition" (*id*. at p. 254) when he made the statements that he died that same day, which the court found "preclud[ed] the likelihood of reflection and fabrication." (*Id.* at p. 245.) By contrast, here defendant was uninjured and calm when he spoke to Officer Foster. Given the dearth of evidence showing defendant was excited when he made the statements, the trial court was within its discretion in finding that the spontaneous statement hearsay exception did not apply.

## 2. Defendant's Statements Were Not Admissible for his State of Mind

Defendant argues his statements were admissible under Evidence Code section 1250, which deems admissible statements of a declarant's then-existing state of mind, emotion, or physical sensation when one or more of those categories are at issue in the action. (Evid. Code, § 1250, subd. (a)(1).) However, defendant's theory is that the statements "reflected his state of mind when he left the scene," which would make them statements of his state of mind, emotion, or physical sensation at a time *prior* to the statement. Statements of a declarant's previously-existing state of mind are governed by Evidence Code section 1251, which differs from Evidence Code section 1250 in requiring the declarant to be unavailable as a witness. (Evid. Code, § 1251, subd. (a).) Because defendant testified, he was available and Evidence Code section 1251 could not apply to his statements.

Even if defendant's statements disclaiming responsibility for Ownbey's stabbing reflected his then-existing state of mind when Officer Foster stopped him, we see no abuse of discretion. Evidence otherwise meeting the requirements of Evidence Code section 1250 is inadmissible if "made under circumstances such as to indicate its lack of trustworthiness." (Evid. Code, § 1252.) Here, the trial court implicitly found that defendant made the statements under circumstances indicating a lack of trustworthiness. The court noted that the "trustworthiness of [defendant's] statements depend[s] on the circumstances under which they were made" and described those circumstances, which

11

involved defendant fleeing the scene, jumping over a fence, and being detained at gunpoint. While defendant argues he fled the scene to escape Ownbey's assault rather than due to consciousness of guilt, the trial court could have reasonably concluded that defendant left to avoid apprehension. On this record, defendant has not shown an abuse of discretion.

### 3. Defendant's Statements Were Not Prior Consistent Statements

In a supplemental opening brief, defendant argues that his statements were admissible as prior consistent statements to rebut the prosecution's suggestion during cross-examination and closing argument that defendant's testimony about the altercation was biased and uncorroborated. Defendant argues that his trial counsel did not forfeit that argument by failing to renew his request to introduce the statements because such request would have been futile given the trial court's decision on the other hearsay exceptions. Alternatively, defendant claims his trial counsel provided ineffective assistance of counsel. The Attorney General's respondent's brief does not address defendant's prior consistent statement argument.

Though futility may excuse a failure to object to the introduction of evidence in certain cases (e.g., *People v. Turner* (1990) 50 Cal.3d 668, 703-704), defendant provides no authority to support his argument that the failure to request *admission* of evidence can be saved from forfeiture on appeal on grounds of futility. We therefore review defense counsel's failure to offer the statements as prior consistent statements for ineffective assistance. To establish ineffectiveness of trial counsel in violation of defendant's Sixth Amendment right to counsel, defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-–217 (*Ledesma*).) We will not find trial counsel deficient if there was a possible tactical reason for his or her failure to act. (See *People v. Cruz* (1980) 26 Cal.3d 233, 255-256 ["[E]xcept in rare cases, an appellate court should not attempt to second-guess trial counsel as to tactics."].) To prove prejudice, defendant must

affirmatively show a reasonable probability that, but for his trial counsel's errors, the result would have been different.  (*Ledesma, supra,* at pp. 217-218.)  A reasonable probability is one " 'sufficient to undermine confidence in the outcome.' "  (*Id.* at p. 218, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 693–694.)

Defendant argues his statements were admissible under Evidence Code section 791, subdivision (b).  Though generally inadmissible, prior statements that are consistent with a witness's testimony at a hearing may be admitted to support a witness's credibility and for truth of the matters asserted if offered after: "An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen."  (Evid. Code, §§ 791, subd. (b); 1236 [prior consistent statement admissible as exception to hearsay if offered in compliance with Evid. Code, § 791].)

The prosecutor's questioning during cross-examination and statements during closing argument attacking defendant's version of the altercation constituted a charge that his testimony was recently fabricated or influenced by bias or improper motive.  For example, the prosecution asked defendant if he flagged down the police for help after the altercation, insinuating that such a response would have been expected had defendant been the victim of an assault, and the defendant indicated he had not.  However, defendant's hearsay statements to Officer Foster were made *after* the altercation, meaning that they were not made "before the bias, motive for fabrication, or other improper motive is alleged to have arisen."  (Evid. Code, § 791, subd. (b).)  Thus, the prior consistent statement hearsay exception did not apply to defendant's hearsay statements.  Because the inapplicability of that exception provided defense counsel with a tactical reason for not requesting admission of defendant's statements, defendant has not demonstrated that his counsel provided ineffective assistance.

13

## B. OWNBEY'S HEARSAY STATEMENTS TO GARCIA-CABRERA

Defendant contends that the trial court abused its discretion in sustaining the prosecution's Evidence Code section 352 objection to defendant's attempt to elicit testimony from Garcia-Cabrera (one of Ownbey's tenants) that Ownbey threatened to evict him if he talked about the case with anyone. Defendant also appears to argue that the trial court's decision violated defendant's Sixth Amendment confrontation clause right to cross-examine Ownbey. A trial court "in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "[T]rial judges retain wide latitude insofar as the [Sixth Amendment's] Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, . . . confusion of the issues . . . ." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) We review a trial court's decision excluding evidence under Evidence Code section 352 for an abuse of discretion. (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1434.)

Ownbey testified that he did not recall having a conversation with Garcia-Cabrera about the altercation apart from asking Garcia-Cabrera whether he knew defendant or was renting a room to him. Because he did not recall a conversation, the trial court correctly found that the out-of-court threat attributed to him was inadmissible as a prior inconsistent statement to impeach Ownbey's testimony. Though not admissible as a prior inconsistent statement, the threat was arguably admissible for the non-hearsay purpose of attacking Ownbey's credibility (specifically his character for honesty or veracity). (Evid. Code, §§ 785, 786.)

Despite being admissible to attack Ownbey's credibility, evidence of the threat was of tenuous probative value. Garcia-Cabrera was apparently going to testify that Ownbey had threatened eviction if he spoke to anyone about the case. Defense counsel

14

did not suggest that Garcia-Cabrera had any other relevant information about the altercation. Against that meager probative value the trial court weighed the realistic probability that the evidence would unduly consume time, confuse the issues, or mislead the jury. (Evid. Code, § 352.) Defendant argues that he "did not seek to offer any evidence on whether Garcia-Cabrera was in fact being evicted." However, the prosecutor made clear that she would ask Garcia-Cabrera about the pending eviction proceeding to impeach Garcia-Cabrera's credibility and suggest a possible motive to lie, meaning that the jury would have been exposed to that information even if defendant had not planned to discuss it. The trial court could reasonably conclude that the risks of admitting the evidence substantially outweighed its probative value. We therefore find neither an abuse of discretion nor a violation the confrontation clause.

### C. FAILURE TO PROVIDE JURY INSTRUCTION REGARDING ACCIDENT DEFENSE

Defendant argues the trial court had a sua sponte duty to provide CALCRIM No. 3404, which instructs that a defendant is not guilty of the charged crime if he acted "without the intent required for that crime, but acted instead accidentally." Alternatively, defendant claims his trial counsel was ineffective for failing to request that instruction.

A trial court must instruct, sua sponte, on a particular defense " 'if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Barton* (1995) 12 Cal.4th 186, 195.) Substantial evidence supporting a defense is "evidence sufficient for a reasonable jury to find in favor of the defendant . . . ." (*People v. Salas* (2006) 37 Cal.4th 967, 982.) We independently review an alleged failure to provide an instruction about a defense. (Cf. *People v. Waidla* (2000) 22 Cal.4th 690, 733 ["An appellate court applies the independent or de novo standard of review to the failure by a trial court to instruct on an uncharged offense that was assertedly lesser than, and included, in a charged offense."].)

The trial court provided CALCRIM No. 875 to the jurors, which states that assault with a deadly weapon requires a finding that defendant "did an act with a deadly

15

weapon . . . that by its nature would directly and probably result in the application of force to a person" and that he did so willfully. That instruction further required the jurors to find that defendant "did not act in self-defense," which was defined by CALCRIM No. 3470. The court also provided CALCRIM No. 250, reaffirming that in addition to finding that defendant committed an act with a deadly weapon directly and probably resulting in the application of force, the jurors also had to find that he did "so with wrongful intent."

At trial, defendant argued that Ownbey accidentally stabbed himself during the altercation and also that any action defendant took was in self-defense. He testified that Ownbey attacked him with something shiny in his hand, that defendant used his hands to block the attack, and that Ownbey eventually started bleeding. During closing argument, defense counsel claimed that "Ownbey was the aggressor" and that his wound was "perfectly consistent with a self-inflicted wound." Counsel also told the jurors that if a person responding to an aggressor "reacts in self-defense [and] causes an injury . . . , [t]hat person who acted in self-defense is absolutely entitled to act in that way and the injury is indicative of nothing." Defendant never suggested he possessed a screwdriver, instead consistently arguing that Ownbey possessed the shiny object.

CALCRIM No. 3404 is warranted where a defendant admits the actus reus—here, performing an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person—but claims he acted accidentally rather than with the willful mental state required for conviction. By contrast, here defendant denied taking any action with a deadly weapon and further argued that any injury Ownbey might have sustained from defendant blocking Ownbey's attack was the result of self-defense. Based on defendant's theory of the case, there was not substantial evidence supporting an accident defense instruction; in fact, that instruction was inconsistent with defendant's theory. Defendant notes that he admitted acting "intentionally to defend himself by blocking" Ownbey's attack. But he never admitted *using a deadly weapon* while

16

blocking Ownbey, meaning that the jury would not have convicted him of assault with a deadly weapon had they believed his version of the altercation regardless of his mental state. As such, the trial court did not err in failing to provide an accident instruction and defense counsel was not ineffective for failing to request it.

### D. PRIOR PRISON TERM ENHANCEMENT

Defendant contends that the trial court erred by staying rather than striking the three-year prior violent felony prison term enhancement (§ 667.5, subd. (a)) that was based on the same prior conviction as the five-year prior serious felony enhancement (§ 667, subd. (a)(1)). He argues that the Supreme Court's decision in *Jones* mandates that the prior prison term enhancement be stricken. (Citing *Jones, supra,* 5 Cal.4th at p. 1148.)

In *Jones*, as part of the defendant's sentence for various sex crimes the trial court imposed a one-year prior prison term enhancement (§ 667.5, subd. (b)) as well as a five-year prior serious felony enhancement (former § 667, subd. (a)),[4] which were both based on a single previous aggravated kidnapping conviction. (*Jones, supra,* 5 Cal.4th at p. 1145.) The court quoted former section 667, subdivision (b), which provided: " 'This section shall not be applied when the punishment imposed under other provisions of law would result in a longer term of imprisonment. There is no requirement of prior incarceration or commitment for this section to apply.' " (*Jones,* at p. 1149.) Noting that subdivision was ambiguous regarding "whether only the greater enhancement available under sections 667 and 667.5 is available, as opposed to both," the court decided that "the most reasonable reading of subdivision (b) of [former] section 667 is that when multiple statutory enhancement provisions are available for the same prior offense, one of which is

_____

[4] In 1994, section 667 was reorganized. Since then, former section 667, subdivision (a) was moved verbatim to its current location at section 667, subdivision (a)(1). Former section 667, subdivision (b) was moved with minor alterations to its current location at section 667, subdivision (a)(2). (Stats. 1989, ch. 1043, § 1, p. 3619; amended by Stats. 1994, ch. 12, § 1, pp. 71-92.)

17

a section 667 enhancement, the greatest enhancement, but only that one, will apply." (*Jones,* at pp. 1149–1150.) Based on that interpretation, the court remanded the case to the trial court "with directions to strike the one-year enhancement" imposed under section 667.5, subdivision (b). (*Id.* at p. 1153.)

We have found no published decision since *Jones* affirming a decision to stay rather than strike a section 667.5 enhancement that was based on the same prior conviction as a section 667, subdivision (a)(1) enhancement. All published authorities we located struck the prior prison term enhancement, often in response to a concession by the Attorney General. (*People v. Gonzales* (1993) 20 Cal.App.4th 1607, 1610 [striking the enhancement]; *People v. Harris* (1994) 22 Cal.App.4th 1575, 1585 [same]; *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1562 [same]; *People v. Nichols* (1994) 29 Cal.App.4th 1651, 1659 [striking the enhancement after concession]; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1021 [same]; *People v. Perez* (2011) 195 Cal.App.4th 801, 805 [same].)

Despite those authorities, the Attorney General urges us to follow the reasoning of *People v. Gonzalez* (2008) 43 Cal.4th 1118 (*Gonzalez*) and *People v. Lopez* (2004) 119 Cal.App.4th 355 (*Lopez*), to find that staying the section 667.5, subdivision (a) enhancement here was appropriate. *Gonzalez* required the court to determine "whether, after a trial court imposes punishment for [a] section 12022.53 firearm enhancement with the longest term of imprisonment, the remaining section 12022.53 firearm enhancements and any section 12022.5 firearm enhancements that were found true for the same crime must be stayed or stricken." (*Gonzalez, supra*, at p. 1122.) To do so, the Supreme Court interpreted section 12022.53, subdivision (f), which states: "If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment." (§ 12022.53, subd. (f); see *Gonzalez*, at p. 1125.) Based on the language of that subdivision, the court concluded that the limitation encompassed by "the word 'impose' in section 12022.53[,]

18

[subdivision ](f) is properly understood as shorthand to mean impose and then execute," meaning that courts should instead impose and then *stay* any additional firearm enhancement that is precluded by section 12022.53, subdivision (f). (*Gonzalez*, at pp. 1129-1130.) *Gonzalez* did not mention *Jones*.

In *Lopez*, the trial court sentenced the defendant as a habitual sex offender (§ 667.71) and also imposed and stayed execution of a sentence under the one strike law (§ 667.61). (*Lopez, supra,* 119 Cal.App.4th at p. 360.) The Court of Appeal in *Lopez* rejected the defendant's argument that *Jones* mandated his stayed sentence under the one strike law be stricken. (*Id.* at pp. 363–366.) While acknowledging that the *Jones* court struck the prior prison term enhancement, the *Lopez* court reasoned that the Supreme Court "did not actually discuss whether striking the unused enhancement finding was the appropriate remedy," and that striking the enhancement was merely chosen as a way to "eliminate the excess punishment." (*Lopez*, at p. 364.) The *Lopez* court concluded that imposing and staying the one strike law sentence was appropriate, and also consistent with California Rules of Court, rule 4.447, which instructs courts to impose and stay execution of any enhancement for which the "term either is prohibited by law or exceeds limitations on the imposition of multiple enhancements." (California Rules of Court, rule 4.447; *Lopez*, at pp. 364–365.)

*Gonzalez* and *Lopez* involved interpretation of different Penal Code sections. *Gonzalez* did not reference *Jones*, which would have been expected had the Supreme Court decided that courts were applying *Jones* incorrectly. Given that *Jones* struck rather than stayed the section 667.5 enhancement and the courts of appeal have routinely followed that practice, we likewise follow suit and will direct the clerk of the superior court to prepare a corrected abstract of judgment striking the section 667.5 enhancement.

### III. DISPOSITION

The judgment is modified to strike the prior prison term enhancement. The clerk of the superior court is ordered to prepare a corrected abstract of judgment striking the

19

Penal Code section 667.5, subdivision (a) sentencing enhancement. As modified, the judgment is affirmed.

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

MÁRQUEZ, J.

21